(No. 32165.—

PAUL C. GRASSE, Appellant, *vs.* DEALER'S TRANSPORT COMPANY, Appellee.

*Opinion filed March 20, 1952—Rehearing denied May 20, 1952.*

AUGUSTINE J. BOWE, WILLIAM J. BOWE, and JOHN D. CASEY, all of Chicago, for appellant.

EDWARD B. CASEY, FRANK J. MACKEY, JR., LORD, BISSELL & KADYK, GORDON R. CLOSE, KENNETH W. BELLILE, and RUSSELL GREENACRE, all of Chicago, for appellee.

THOMAS C. STRACHEN, JR., WERNER W. SCHROEDER, and JAMES E. HASTINGS, *amici curiae,* on rehearing.

Mr. JUSTICE BRISTOW delivered the opinion of the court.

Plaintiff, Paul C. Grasse, and his employer, Swift & Company, instituted proceedings for damages against defendant, Dealer's Transport Company, for injuries sustained by plaintiff Grasse in the course of his employment, as a result of a motor vehicle collision caused by the alleged negligence of one of defendant's employees. The circuit court of Cook County, in a judgment entered on the pleadings, dismissed the claim of plaintiff Grasse, presented in count I of the complaint, on the ground that it was barred by paragraph 1 of section 29 of the Workmen's Compensation Act, which the court held to be constitutional. From this judgment plaintiff Grasse has prosecuted this appeal.

The sole issue presented by this appeal is the constitutionality of the first paragraph of section 29 of the Workmen's Compensation Act (Ill. Rev. Stat. 1947, chap. 48,

par. 166,) which is: "Where an injury or death for which compensation is payable by the employer under this Act was not proximately caused by the negligence of the employer or his employees, and was caused under circumstances creating a legal liability for damages in some person other than the employer to pay damages, such other person having also elected to be bound by this Act, or being bound thereby under section three (3) of this Act, then the right of the employee or personal representative to recover against such other person shall be transferred to his employer and such employer may bring legal proceedings against such other person to recover the damages sustained, in an amount not exceeding the aggregate amount of compensation payable under this Act, by reason of the injury or death of such employee."

The facts presented in the pleadings are uncontroverted. Plaintiff Grasse was driving a motor vehicle in an easterly direction on Seventy-ninth Street, near the intersection with Sayre Avenue, in Stickney Township, Cook County, allegedly in the exercise of due care for his own safety, and as a result of the alleged negligence of defendant's agent, who was driving a motor vehicle in a westerly direction on the same street, the vehicles collided, causing permanent injuries to plaintiff Grasse, who was required to spend and become liable for some $9000, for which he is now seeking damages against defendant in the amount of $100,000 in count I of the complaint.

Inasmuch as count II of the complaint is not involved on this appeal, it is sufficient to note that it presented the claim of Swift & Company, which realleged the circumstances of the collision, the negligence of defendant's agent, and the injuries and damages sustained by plaintiff Grasse as a result of the collision in the course of his employment for Swift & Company. This count further alleged that Swift & Company, pursuant to proper notice and claim, had made payments of compensation and medical expenses to

Grasse, and that under section 29 defendant was required to reimburse Swift & Company for such expenditures in the amount of $12,000. Defendant denied the allegations with reference to the negligence and damages, but no further disposition of this count was made by the trial court.

With reference to count I, defendant admitted in its answer the occurrence of the collision in which plaintiff Grasse was injured, and the fact that the vehicle was driven by its agent, but denied all other allegations. Defendant submitted the further defense that, inasmuch as the alleged injuries to plaintiff arose out of and in the course of his employment for Swift & Company, which was automatically under the Workmen's Compensation Act and had been paying plaintiff Grasse compensation pursuant to his claim thereunder, and, further, since defendant was also under the act, both automatically and by election, under section 29 all rights which plaintiff Grasse might have against the defendant as a result of the injury were transferred by operation of law to Swift & Company, and, consequently, plaintiff Grasse was without legal capacity to maintain this action. Defendant's answer requested that an order be entered dismissing count I for want of jurisdiction.

Plaintiff Grasse filed a motion to strike those paragraphs of defendant's answer setting forth the defense predicated on section 29 of the act, on the ground that section 29, construed with section 3, (Ill. Rev. Stat. 1947, chap. 48, par. 139,) which provides that the act apply automatically to the employers and employees of designated hazardous employments, violates provisions of the Federal and Illinois constitutions, and is, therefore, void. The specific constitutional clauses allegedly violated by section 29 are section I of the fourteenth amendment, the commerce clause, and section 2 of article IV of the Federal constitution; and section 2 of article II, section 19 of article II, and section 22 of article IV of the Illinois constitution.

The trial court held that the first paragraph of section 29 was valid and that defendant's answer, predicated thereon, constituted a valid defense. Therefore the court denied plaintiff Grasse's motion to strike defendant's answer and dismissed count I of the complaint without prejudice to the pending cause of action of Swift & Company. This determination was predicated upon the reasoning in the recent case of *Baim* v. *Fleck,* 406 Ill. 193, which held that the legislature has wide latitude in making statutory classifications. It was considered that since section 29 was apparently a concession to employers as potential third party tort-feasors in the enactment of the Workmen's Compensation Act originally, it is conceivable that, but for this concession, the entire Workmen's Compensation Act might not have been enacted, hence the invalidity of this provision might render the entire act unconstitutional.

In determining whether the trial court erred in sustaining the constitutionality of the first paragraph of section 29, we shall consider first whether, as defendant insists, and plaintiff denies, the precise constitutional question has been adjudged by this court in a binding precedent; and then analyze the terms and construction of the statute and ascertain whether the classifications provided therein violate any of the guarantees of the Federal and State constitutions.

It is established that a decision sustaining the constitutionality of a statute is not decisive of its validity against subsequent attacks upon different grounds, and does not preclude the court from subsequently declaring the statute unconstitutional where it is assailed upon other constitutional grounds. *Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130; *Sturges* v. *City of Chicago,* 237 Ill. 46, 50.

Although stated in the recent case of *Petrazelli* v. *Propper,* 409 Ill. 365, at page 370, that section 29 has been held constitutional, the court did not consider or pass upon any specific constitutional questions therein, but merely

stated that plaintiff's assertion of the unconstitutionality of the section, which apparently was not seriously pressed, was without merit. The grounds urged by plaintiff herein in challenging the statute were neither presented in that case nor in the cases cited by the court.

The scope of those decisions cannot be ascertained without reference to the history of the act under consideration. The first paragraph of section 29, passed in 1913, deprived employees of a common-law right of action against third party tort-feasors who elected to be bound by the act, as the present act does, but was then part of an elective compensation act. The constitutionality of this section was sustained in *Keeran* v. *Peoria, Bloomington and Champaign Traction Co.* 277 Ill. 413, where the court predicated its decision on the fact that the act was elective. The court held that since the employee had a right to elect whether he would take the benefits of the act, and, having done so, the act became part of a binding contract between him and his employer, and consequently the employee could not urge that his constitutional rights were infringed by any of the obligations of the act.

Of the cases cited in *Petrazelli* v. *Propper,* it appears that the court in *Friebel* v. *Chicago City Railway Co.* 280 Ill. 76, construing the same elective statute, predicated the constitutionality of section 29 on the ground that the statute was elective and became part of the employment contract, in accordance with the *Keeran case. Gones* v. *Fisher,* 286 Ill. 606, involved the second paragraph of section 29 rather than the first, and the court therein merely reiterated the conclusions in the *Keeran* and *Friebel cases. City of Taylorville* v. *Central Illinois Public Service Co.* 301 Ill. 157, merely held that the parties erroneously interpreted section 29, for in order to recover the amount of the compensation award from the third party tort-feasor, the employer had to prove all the elements of damage sustained by the employee, and that such damages were at least as

much as the compensation award; and in *Bauer* v. *Rusetos & Co.* 306 Ill. 602, the court specifically stated that the validity of section 29 was not questioned.

In 1917 the Workmen's Compensation Act was amended whereby it applied automatically to employees and employers engaged in certain designated hazardous enterprises, and such persons no longer had the right to elect not to be bound by the act. The constitutionality of the compulsory act was sustained in *Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 Ill. 167, on the ground that it was a valid exercise of the police power, rather than on the theory obtaining previously that the act became part of the contract of employment when the parties elected to become bound thereby. The court held that the State had power to establish this departure from the common-law rules affecting employers' liability for personal injuries to their employees, since the public had a direct interest in the matter of compensation for human life lost or disability incurred in the course of a hazardous employment, which should properly be borne by the common enterprise. However, there was no question raised therein as to the validity of section 29 under this compulsory statute, nor did the court consider the relationship between either the employer or the employee and the third party tortfeasor.

We are, therefore, in agreement with the trial court that the constitutionality of the first paragraph of section 29 of the present compulsory act has neither been adjudicated by this court nor challenged on the grounds urged by the plaintiff herein, *i.e.,* that the provision effects arbitrary classifications in violation of the aforementioned constitutional guarantees. Therefore, in the absence of a binding precedent it is incumbent upon this court for the first time to determine this constitutional issue.

From the terms of the statute it appears that where an employee under the act is injured in the course of his

employment by the negligence of a third party tort-feasor who is bound by the act, the employee has no common-law right of action against such person, and can secure only compensation from his employer. (*O'Brien* v. *Chicago City Railway Co.* 305 Ill. 244.) The third party is granted immunity from liability, except that he may be obliged to reimburse the employer of the injured employee for the amount of compensation paid. The employer must first establish, however, in an action instituted in his own name, and for his exclusive benefit, the negligence of the third party tort-feasor, the injured employee's freedom from contributory negligence, the amount of damage suffered by the injured employee, and all the essential elements the latter would have had to prove if his cause of action had not been abolished and transferred, as well as the fixed amount of compensation the employer must pay. *City of Taylorville* v. *Central Illinois Public Service Co.* 301 Ill. 157.

Moreover, under this provision of section 29 the third party tort-feasor may be granted complete immunity if the employer of the injured party fails to institute suit against him, or if the amount of compensation due the injured employee is not determined in a compensation proceeding before the expiration of the Statute of Limitations on the common-law action, which begins to run as of the date of the employee's death or injury by the tort-feasor. (*Schlitz Brewing Co.* v. *Chicago Railways Co.* 307 Ill. 322, at p. 327.) The employer's common-law action under this section cannot be maintained until the amount of compensation due his employee is fixed. *Union News Co.* v. *Continental Electric Construction Co.* 343 Ill. App. 521.

Where, however, the third party tort-feasor is not bound by the act, the injured employee has a right to the full measure of his common-law damages under the second paragraph of section 29. (*O'Brien* v. *Chicago City Railway Co.* 305 Ill. 244; *City of Chicago* v. *Pizel,* 315 Ill. App. 216.) The employer of the injured employee is

granted a lien under this provision of the statute on the amount recovered by the employee, to the extent of the compensation paid, and may institute proceedings against the third party tort-feasor, for the benefit of both himself and the employee (*Gones* v. *Fisher,* 286 Ill. 606; *O'Brien* v. *Chicago City Railway Co.* 305 Ill. 244,) if the latter fails to do so within a specified time.

It is apparent that defendant's scholarly presentation of the decisions further construing section 29 is illustrative only of the difficulties encountered by the courts in applying the section, but does not determine the issue in this cause, since there is no disagreement between the parties over the construction of the act.

Plaintiff, Grasse, contends that the statute creates certain unreasonable classifications : It allegedly divides injured employees bound by the act and whose injuries result from the negligence of a third party tort-feasor into two classes, depending upon the fortuitous circumstances of whether the tort-feasor is bound by the act, and deprives one class of the right to collect compensatory damages from the tort-feasor, while allowing such right to the other class, even though there is no substantial or rational difference between the injured employees in the two classes. It allegedly divides tort-feasors into two classes, those bound by the act, whose negligent acts cause injuries to employees of other enterprises under the act, and all other tort-feasors. The first class has immunity from liability for damages limited to the amount of compensation that an employer would be required to pay an employee under the act, while the other class has no such immunity, although there is no rational or substantial difference of situation between the tort-feasors. It allegedly divides employers bound by the act, who are entitled to reimbursement for losses sustained in the payment of compensation, into two classes, depending upon the fortuitous circumstances of whether the third party who injured the employee is bound by the act, and

gives the one class an adequate and effective remedy, but denies such remedy to the other class, even though there is no rational difference in the situation between the employers in the two classes.

Defendant denies these assertions and maintains it is judicial interpretation rather than the terms of the statute itself which creates the classifications. The only classification provided in section 29, according to defendant, is for determining when a common-law action for damages can be maintained by an employee against a third party tort-feasor, and this classification is based upon whether the tort-feasor is bound by the Act. Defendant further insists that this logical classification constitutes a proper exercise of the police power, and argues that inasmuch as it has been held that the validity of the Compensation Act does not depend upon any contractual relation between the parties, but upon a valid exercise of the police power, the fact that section 29 affects persons who have no contractual relation would not render it unconstitutional.

In adjudging the constitutionality of this first paragraph of section 29, we are not concerned with the wisdom of the statute, (*Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 Ill. 167, at page 172,) hence, defendant's discussion of the advantages and disadvantages for the employer and employee is in no way determinative. Nor are we concerned with the uniqueness of this section, which has no counterpart in the compensation laws of New York, New Jersey, Massachusetts, Michigan, Indiana, and the overwhelming majority of States, where the compensation acts allow the injured employee to elect whether he will seek compensation against his employer, or damages against the third party tort-feasor. (New York Stat., McKinney, Book 64, sec. 29; Massachusetts Stat. chap. 15, sec. 15; New Jersey Stat. 34: 15-40; Indiana Stat. chap. 40-1213; Michigan Stat. sec. 413.5.) Nor do we deem determinative the fact, pointed out by plaintiff and recognized by the

trial court, that section 29 has been labelled by the courts as "ambiguous" and "hydraheaded" and as warranting revision. (*Schlitz Brewing Co.* v. *Chicago Railways Co.* 307 Ill. 322; *Havana Nat. Bank* v. *Tazewell Club,* 298 Ill. App. 393.) Our duty is solely in ascertaining whether the statute as construed deprives plaintiff of his constitutional rights, and that duty cannot be evaded nor neglected no matter how desirable or beneficial the legislation may be, (*Sutter* v. *People's Gas Light and Coke Co.* 284 Ill. 634; 11 Am. Jur. 716, and cases cited,) or that dire consequences may follow, if it is held unconstitutional, or by the fact that the statute has been in force many years. 11 Am. Jur. 703; *People* v. *Kelly,* 347 Ill. 221, 223.

We are cognizant of the constitutional principles, thoroughly settled by decisions of the United States Supreme Court, that no person has any vested right in any rule of law entitling him to insist that it shall remain unchanged for his benefit; (*Wall* v. *Chesapeake & Ohio Railway Co.* 290 Ill. 227, affirmed 256 U.S. 125; *New York Central Railroad Co.* v. *White,* 243 U.S. 188;) that no constitutional right is necessarily violated by changing or abolishing a remedy available at common law, for such change may be predicated upon a valid exercise of the police power in order to promote the public comfort, health, safety and welfare.

As hereinbefore noted, the constitutionality of the Illinois Workmen's Compensation Act, as well as those of other States, has been sustained as a valid exercise of this police power. (*New York Central Railroad Co.* v. *White,* 243 U.S. 188.) However, it is evident that the primary purpose of the Workmen's Compensation Act is to afford employees and their dependents a measure of financial protection, (*Baker & Conrad, Inc.* v. *Chicago Heights Construction Co.* 364 Ill. 386, 393,) and that a major portion of the statute pertains, not to tort liability, but to a system for imposing liability without fault upon employers

for the benefit of their own employees. The basis upon which the validity of such legislation was sustained was as a regulation of the master-servant relation. Inasmuch as the general public had an interest in the loss of life and disablity incurred in the course of a hazardous employment, this system of liability and compensation between employers and their own employees injured in the course of their employment was deemed to be a reasonable exercise of the police power.

Section 29, however, does not purport to regulate the relationship between employers and employees, which are a recognized class for special legislation, but modifies, and even eliminates under some circumstances, the tort liability of third parties who negligently injure employees engaged in another enterprise. It is evident, therefore, that the basis and justification for sustaining the exercise of the police power for the major portion of the Workmen's Compensation Act does not apply to section 29, which treats of a different situation, and regulates tort liability between persons who have no employment or other relationship. The fact that other portions of the act constitute a reasonable exercise of the police power does not mean that section 29, which has a different and distinct purpose, is *per se* a proper exercise of the police power.

The distinction between exercising police power in connection with an employment relation, and exercising it between an employer or an employee and third party tortfeasors was recognized by the United States Supreme Court in *Truax* v. *Corrigan,* 257 U.S. 312, where the court, in construing a statute depriving an employer of his right to injunctive relief for injuries to his property rights inflicted by third party tort-feasors who had no special relation to the employer, distinguished the workmen's compensation statutes, and stated: "The broad distinction between one's right to protection against a direct injury to one's fundamental property right by another who has no special rela-

tion to him, and one's liability to another with whom he establishes a voluntary relation under a statute is manifest upon its statement. . . . It seems a far cry from classification on the basis of employer and employee in respect to injuries received in the course of employment, and classification based on the relation of an employer, not to an employee, but to one who has ceased to be so, in respect to torts thereafter committed by such person on the business and property rights of an employer."

It may be noted that the Illinois courts have construed a similar statute to that involved in the *Truax case* to be applicable only to situations involving employers and their own employees. (*Meadowmoor Dairies, Inc.* v. *Milk Wagon Driver's Union,* 371 Ill. 377, 384; *Swing* v. *American Federation of Labor,* 372 Ill. 91.) The court, in the *Truax case,* further stated that it knew of no case where the United States Supreme Court had sustained a classification "of persons of sound mind and full responsibility who had no special relation to each other in respect to remedial procedure for an admitted tort."

Defendant, however, relies upon a statement in *Illinois Publishing and Printing Co.* v. *Industrial Com.* 299 Ill. 189, to the effect that the present compensation law is based squarely upon the police power of this State, and does not depend upon the contractual relation of master and servant, as authority for defendant's contention that even where there is no contractual relation of master and servant between the parties, a regulation of their tort liability will be upheld as a valid exercise of the police power.

Defendant's interpretation of this statement is incorrect. The language of the court, construed in its proper context, where the court was considering the validity of the act as a regulation of the employer's liability to his employees, meant that whereas the validity of the earlier elective compensation act was sustained, as hereinbefore noted, on the theory that when the parties elected to be bound by the

act it became part of their contract relations, and its enforcement did not violate any constitutional rights. However, this contractual theory was no longer necessary or applicable under the present compulsory act, since there is no right of election whereby the act could be deemed to be part of the contractual relation of master and servant. Thus, the statement of the court in no way determines that section 29 is a reasonable exercise of the police power, irrespective of the relationship of the parties.

In ascertaining whether section 29 is a proper exercise of the police power, in the absence of any determinative authority, this court recognizes that the legislature has wide discretion in the exercise of this power, (*Baim* v. *Fleck*, 406 Ill. 193,) and that it is not circumscribed by precedents arising out of past conditions, but is elastic and capable of expansion in order to keep pace with human progress. (*Fenske Bros., Inc.* v. *Upholsterers International Union*, 358 Ill. 239.) In the exercise of this police power, moreover, the legislature may make classifications to subserve public objects, (*Marallis* v. *City of Chicago*, 349 Ill. 422,) for perfect uniformity of treatment of all persons is neither practical nor desirable. *Truax* v. *Corrigan*, 257 U.S. 312.

With reference to defendant's contention that section 29 does not itself set up classifications, but that the alleged classifications have been established by judicial interpretation, it is apparent that in ascertaining the constitutionality of a statute the court is concerned with its practical operation, and its natural and reasonable effect on the rights involved. (16 C.J.S., 230-231; *Shaffer* v. *Carter*, 252 U.S. 37, 56.) The phrase "such other person having also elected to be bound by this act, or being bound thereby under section 3," creates in operation classifications among employees, employers, and tort-feasors.

For these classifications to be deemed constitutional, as in all cases involving classifications, it must appear that

the particular classification is based upon some real and substantial difference in kind, situation or circumstance in the persons or objects on which the classification rests, and which bears a rational relation to the evil to be remedied and the purpose to be attained by the statute, otherwise the classification will be deemed arbitrary and in violation of the constitutional guaranties of due process and equal protection of the laws. *Connolly* v. *Union Sewer Pipe Co.* 184 U.S. 540; *Marallis* v. *City of Chicago,* 349 Ill. 422; *Josma* v. *Western Steel Car and Foundry Co.* 249 Ill. 508; *Power Co.* v. *Saunders,* 274 U.S. 490; *American Sugar Refining Co.* v. *United States,* 179 U.S. 89.

Although these constitutional guaranties overlap, so that a violation of one may involve the violation of the other, the spheres of protection they offer are not coterminous, for the guaranty of equal protection of the laws extends beyond the requirements of due process. (*Truax* v. *Corrigan,* 257 U.S. 312.) Moreover, section 22 of article IV of the Illinois constitution supplements the equal protection provision of the fourteenth amendment of the Federal constitution, by prohibiting the passage of a special law granting to any corporation or association or individual any special or exclusive privilege, immunity or franchise. *Michigan Millers Mutual Fire Ins. Co.* v. *McDonough,* 358 Ill. 575.

The determination of whether these constitutional guaranties are infringed by a particular statutory classification is not without difficulty, and that difficulty is not met by merely reiterating that a classification has been made, (*Michigan Millers Mutual Fire Ins. Co.* v. *McDonough,* 358 Ill. 575,) such as between tort-feasors bound by the act, and those not bound by the act. The classification must conform to the aforementioned test before it can be deemed a proper exercise of the police power.

To analyze each of the cases cited by plaintiff wherein the Illinois courts have held that the particular classifica-

tion violated the constitutional guaranties would unduly prolong this opinion, and would not be determinative of the issue in this cause, for each of those cases involves only the court's evaluation of whether that particular classification is based upon reasonable differences in kind or situation, which are sufficiently related to the evil to be obviated by the statute. These cases include: *Josma* v. *Western Steel Car and Foundry Co.* 249 Ill. 508; *Marallis* v. *City of Chicago*, 349 Ill. 422; *People ex rel. Jendrick* v. *Allman*, 396 Ill. 35; *Agnew* v. *Woodruff & Edwards*, 365 Ill. 384; *Michigan Millers Mutual Fire Ins. Co.* v. *McDonough*, 358 Ill. 575; *Hansen* v. *Raleigh*, 391 Ill. 536; *Metropolitan Trust Co.* v. *Jones*, 384 Ill. 248; *Anderson* v. *Shepard*, 285 Ill. 544; *Frorer* v. *People*, 141 Ill. 171; *Jensen* v. *Wilcox Lumber Co.* 295 Ill. 294; *DeMotte* v. *DeMotte*, 364 Ill. 421; *Hunt* v. *County of Cook*, 398 Ill. 412; *People ex rel. Seemann* v. *Greer College*, 302 Ill. 538.

It is of greater import, in our judgment, to closely analyze the classification effected by the first paragraph of section 29 in the light of the purpose of the Workmen's Compensation Act of Illinois. The evil to be remedied by that act was that under the common-law rules of master-servant liability, employees injured in the course of their employment had to bear practically the full measure of their loss, hence a substitute system of liability was provided. Apparently, a second objective of the act was to afford a remedy to employers who paid compensation to their employees injured by third party tort-feasors, (*Baker & Conrad, Inc.* v. *Chicago Heights Construction Co.* 364 Ill. 386,) and this was provided in section 29.

In determining whether the classifications effected by section 29 effectuate these purposes, it is evident that the classification of injured employees provided therein is arbitrary and in no way promotes any of the objectives of the act. All employees entitled to compensation for injuries sustained in the course of their employment and caused by

third persons are not treated alike. Those injured by third party tort-feasors bound by the act are not entitled to common-law damages from such persons, whereas those injured by third party tort-feasors not bound by the act are allowed to institute actions for damages. Both classes of injured employees may be entitled to compensation from their own employers, so that the amount of compensation, if any, received by the injured employee is not the basis for differentiation between the classes. Nor is there any basis for differentiation from the nature of the injuries sustained, or from the activity of the employee at the time of the injury, or from any other factor ordinarily related to an injured party's right to recover damages. The sole basis for differentiation, as far as the injured employee is concerned, is a fortuitous circumstance—whether the third party tort-feasor happens to be under the act.

It is readily apparent that there is no rational difference between an employee injured in the course of his employment by a motorbus, and one injured by a farmer's truck. Each may sustain the same injuries, and be entitled to the same amount of compensation from their employers; neither had any control over the circumstances of their injuries, or the status of the party who hit them, yet in one case the statute authorizes the employee to recover damages from the third party, and in the other case the employee must be content with the amount of compensation he may be entitled to receive from his employer.

Furthermore, this first paragraph of section 29 operates to completely deprive an injured employee of any recovery whatsoever for his injuries where his own employer is insolvent. There is no provision in the act which resurrects and transfers back to the employee his common-law cause of action under those circumstances, so as to allow him to recover from the third party tort-feasor at least the amount of compensation due, as intimated by the dictum in the *Friebel case.* Section 29 transfers the employee's right of

action to the employer as the latter's absolute property, without giving the employee any lien upon it. It is inconceivable how such a result, which follows from the terms of the first paragraph of section 29, effectuates the purpose of the act.

Defendant contends that employees injured by third party tort-feasors bound by the act, and employees injured by third party tort-feasors not bound by the act are in different situations, and, therefore, need not be treated alike under the equal protection clauses of the Federal and State constitutions.

Admittedly, any number of varying "situations" can be prescribed by the statute and different treatment provided for each "situation." However, as hereinbefore noted, such differentiation, to be sustained, must bear some reasonable relation to the objective of the statute. It is entirely reasonable to provide that there be a difference in the amount of compensation payable for the loss of a toe than for the loss of a leg, for such differentiation bears a reasonable relation to the statutory objective of affording employees scheduled payments in proportion to disability and loss of use sustained in industrial accidents. However, a statutory distinction between employees sustaining identical injuries and entitled to the same amount of compensation, which denies one of the employees common-law damages against a tort-feasor if he happens to be bound by the act, and allows the other employee his full measure of damages if the tort-feasor happens to be outside the act, is clearly unreasonable, because the fact that the third party tort-feasor may have to pay his own employees compensation or is entitled to compensation himself, does not justify denying the injured employee recovery against such tort-feasor.

The first paragraph of section 29 also operates to effect arbitrary classifications of employers, and rather than effectuating the purpose of the statute, operates to defeat the aforementioned second objective of affording a remedy to

employers who have paid compensation to their employees injured by third party tort-feasors.

As hereinbefore noted under our analysis of the statute, the employee's common-law action for damages against the third party tort-feasor is transferred to the employer, and, therefore, since it is the same cause of action the employee would have had, the Statute of Limitations thereon begins to run as of the date of the employee's injury. (*Schlitz Brewing Co.* v. *Chicago Railways Co.* 307 Ill. 322.) However, since section 29 not only transfers this cause of action, but modifies it so that the employer's right to recover is predicated on, and limited to, the amount of compensation he must pay, the employer cannot institute this common-law action against the third party tort-feasor until the amount of compensation he must pay is fixed. Under these circumstances, it is quite possible that the Statute of Limitations on the common-law action may expire before the employer is entitled to institute procedings (*Schlitz Brewing Co.* v. *Chicago Railways Co.* 307 Ill. 322,) and a common-law action commenced before the compensation award against the employer had been fixed would be dismissed on the ground that there could be no proper allegation of the amount of compensation payable under the act. *Union News Co.* v. *Continental Electrical Construction Co.* 343 Ill. App. 521.

In sharp contrast, however, where the third party tort-feasor is not bound by the act, the employer whose employee has been injured, has a full and complete remedy under the second and third paragraphs of section 29. Although the employee has his own common-law right of action, the employer not only has a lien on the amount of damages recovered to the extent of the amount of compensation he is required to pay, but if the employee fails to institute suit within a specified time the employer has the right to do so for the benefit of both employer and employee.

These inequities among employers, in derogation of the statutory purpose, are not the result of judicial legislation, but the inevitable consequence of an anomalous provision, which effects an arbitrary classification of employers similarly situated, whereby one class is given a complete remedy and the other class is given a limited one, and, in some instances, deprived of any remedy at all. As stated in the *Josma case,* a statute cannot be sustained where it appears that the classification applies in some instances and does not apply in other cases not essentially different.

This controverted provision, moreover, effects an arbitrary classification of tort-feasors, whereby one class is granted immunity from liability for negligence solely on the basis that he is automatically bound by the act by virtue of section 3. This basis of differentiation bears no relation to the nature of the tort-feasor's acts, or to any other circumstance within his control which ordinarily determines tort liability. The fact that the tort-feasor may be an employer who is required to pay compensation to his own employees, or may be an employee who would be entitled to compensation from his employer (*Thornton* v. *Herman,* 380 Ill. 341,) is no justification for exempting such tortfeasor from liability for injuries inflicted upon other persons with whom he has no contractual or other relationship. To do so is putting a premium on the employer's and employee's negligence, as long as it is directed against other employees.

It is not the purpose of section 29 to give blanket immunity to any class of tort-feasors. It is recognized, however, that when the act was elective, such immunity from liability to third persons might have induced employers, as potential tort-feasors, to come under the act, and thus encourage wider application of the compensation system. Under the present compulsory statute, however, where the third party tort-feasor employer or employee would be

bound by the act under section 3, irrespective of his choice, it is not clear how this immunity from liability can effectuate the purpose of the act.

Moreover, if the rationale of the Workmen's Compensation Act is that the common enterprise shall bear the loss occasioned by injuries to the employees thereof in the course of their employment, that does not justify or excuse the employer from liability for his own, or his employees' negligent acts against persons engaged in another enterprise. If the fact that the injured employee may be entitled to collect compensation from his employer is the alleged justification for denying him the right to prosecute a remedy against a third party tort-feasor, that does not constitute a rational ground for differentiating between tort-feasors, and giving some immunity, but allowing the full measure of liability to be imposed upon others. Furthermore, all employers as third party tort-feasors are not treated alike, for some may be liable to the full measure of common-law damages and some may have to pay only the amount of compensation that may be due. Therefore, this classification of tort-feasors created by the operation of the first paragraph of section 29 is not only arbitrary, but is in no way related to the purpose of the act.

On the basis of the foregoing analysis, it is apparent that the arbitrary classifications created by the first paragraph of section 29 of the act do not constitute a reasonable exercise of the police power, and violate the guaranties of due process of law and equal protection of the laws under the Federal and State constitutions, as well as section 22 of article IV of the Illinois Constitution, forbidding special laws granting special privileges and immunities, and the policy of the State constitution set forth in section 19 of article II, providing that every person ought to find a certain remedy in the law for all injuries and wrongs which may be received to an individual's person, property or reputation.

One of the most firmly established doctrines in the field of constitutional law is that a court will ordinarily inquire into the constitutionality of a statute only to the extent required by the case before it, and will not formulate a rule broader than that necessitated by the precise situation in question. (16 C.J.S. 215.) The issue before the court herein is whether the first paragraph of section 29, which deprives an employee under the act, injured in the course of his employment by a third party tort-feasor compulsorily bound by the act, of a common-law action for damages against such tort-feasor, and transfers the employee's cause of action to his employer, effects arbitrary classifications in violation of the Federal and Illinois constitutions. We have found that this provision offends the aforementioned constitutional doctrines.

The effect of our determination is to render the provision void, and to relegate the parties to such rights as they may have had prior to the enactment of the unconstitutional provision. (*People* v. *Schraeberg,* 347 Ill. 392.) Under those circumstances, the rights of the parties would be governed by common-law subrogation principles, and the non-negligent employer who had paid compensation would be entitled to be subrogated to the rights of the employee against the third party tort-feasors. The employee, in turn, would not be entitled, as defendant suggests, to retain both compensation from his employer and damages against the third party, but would, under common-law principles, be required to reimburse his employer for the amount paid him from the sum recovered from the third party. Where, however, the third party tort-feasor is not bound by the act, the employer's subrogation rights would still be governed by the second paragraph of section 29, which has not been modified by our decision.

The essential difference between the status of employers who would now be relegated to common-law subrogation rights against tort-feasors under the act, and employers

who assert rights under the second paragraph of section 29 against tort-feasors who are not bound by the act, is the time when such rights may be asserted. It should be noted that even prior to this decision respecting the constitutionality of the first paragraph of section 29, there were discriminations made by the operation of the statute as to the time and manner of asserting subrogation rights. The fact that such a distinction still obtains and that as a result of our decision a situation is created which might warrant either legislative reform—and such legislation is frequently necessary to adjust rights after statutes are held unconstitutional—or require other judicial determinations with respect to rights which are not before the court, does not justify the court in changing its opinion as to the unconstitutionality of the provision before it.

We are not in agreement with the trial court that a decision holding the first paragraph of section 29 of the Workmen's Compensation Act unconstitutional would require holding the remainder of the act invalid. The established rule is that only the invalid parts of a statute are without legal effect, unless all the provisions are so connected as to depend upon each other. (*McDougall* v. *Lueder,* 389 Ill. 141; *Baim* v. *Fleck,* 406 Ill. 93.) If that which remains after the unconstitutional portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section or act unconstitutional.

It is evident from an examination of the Workmen's Compensation Act that even if the first paragraph of section 29, as applied to third persons compulsorily bound by the act, were held invalid, the remainder of the section, as well as the entire act, could be enforced, since this provision, though of benefit to one class of tort-feasors, would not affect the scheme of the Workmen's Compensation Act, or the system of liability imposed therein.

The major portion of the act deals with liability without fault between employers and employees, whereas section 29 deals with common-law negligence actions, not between employer and employee, but between employees and third persons, and employers and third persons. Thus, it is apparent that there is both a different basis of liability and a different relationship between the parties in proceedings under this controverted provision and proceedings under the remainder of the act.

Moreover, it cannot be held that this first paragraph of section 29 was the *"quid pro quo"* for the imposition of liability without fault upon employers, as defendant suggests. The alleged *"quid pro quo"* for imposing liability without fault upon employers to their employees is the scheduled and limited payments the employers are required to pay their employees, and not the additional bonus of limiting both the employer's and employee's common-law liability to third persons. Hence, eliminating this immunity cannot necessitate invalidating the entire act.

This construction, with reference to the severability of the unconstitutional provision, is consistent with the legislative intent expressed in section 34 of the act (Ill. Rev. Stat. 1947, chap. 48, par. 172,) which provides: "The invalidity of any portion of this act shall in no way affect the validity of any portion thereof which can be given effect without such invalid part."

It is, therefore, our judgment that the trial court erred in denying plaintiff Grasse's motion to strike that portion of defendant's answer predicated on the constitutionality of the first paragraph of section 29 of the Workmen's Compensation Act, and in dismissing plaintiff's claim as alleged in count I of the complaint. Hence, the judgment must be reversed, and the cause remanded, with directions to reinstate count I of the complaint.

*Reversed and remanded, with directions.*